IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

CARROLL CREWS,

    Petitioner,

v.                                                                                                                          No. 1:18-cv-01030-JDB-jay

STANLEY DICKERSON,

    Respondent.

ORDER DIRECTING CLERK TO MODIFY RESPONDENT,
DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner, Carroll Crews, has filed a pro se habeas corpus petition (the "Petition"), pursuant to 28 U.S.C. § 2254. (Docket Entry ("D.E.") 1.) For the following reasons, the Petition is DENIED.

BACKGROUND

In April 2014, the Dyer County, Tennessee, grand jury charged Petitioner with the sale of a Schedule III controlled substance. (D.E. 10-1 at PageID 48.) At her jury trial, "Officer Lynn Waller of the Dyersburg Police Department (DPD) testified that he was on patrol with another DPD officer, Charlie Cox, on September 28, 2013, when they drove by the H & S Market." *State v. Crews*, No. W2015-01683-CCA-R3-CD, 2016 WL 3216046, at *1 (Tenn. Crim. App. June 2, 2016). Waller and Cox observed Crews at the window of a pickup truck conducting "what appeared to be a 'hand to hand' drug transaction." *Id.* "Officer Cox testified that he 'saw money being transferred' from the Defendant 'back and forth to the guy driving the truck.'" *Id.* When the officers entered the store parking lot, Crews "quickly walked away from the red truck and back to her car." *Id.* When Waller spoke with Crews, she "denied selling pills to the driver of the

pickup truck." *Id.* She told the officer that "the driver was a family member whom she was giving 'some Xanax' to because a mutual relative had 'just died.'" *Id.* She was, however, "unable to tell [Waller] the name of the driver of the truck." *Id.* "Officer Waller found an empty 'pill bottle' with the Defendant's 'name on it' when he searched her." *Id.*

Upon speaking "to the occupants of the red pickup truck," Waller learned that the driver was Brandon Williams and the passenger was Kenneth Connell. *Id.* Waller testified that Williams cooperated with the officers and handed over four hydrocodone pills. *Id.* Waller discovered "a twenty-dollar bill, two one-dollar bills, and eight quarters in '[t]he pocket' of the driver's side door of the pickup truck." *Id.* (alteration in original). He also "found a small amount of marijuana on the persons of both Mr. Williams and Mr. Connell but that he let them 'thr[o]w [it] out' rather than charge them for simple possession." *Id.* (alteration in original).

Williams testified that Crews, whom he described as an "acquaintance," "approached him in the parking lot of the store" and "asked him if he wanted to buy 'some [h]ydros.'" *Id.* (alteration in original). Defendant sold four pills to Williams for sixteen dollars and provided Williams with four dollars in change for a twenty-dollar bill. *Id.* at *2. Williams further testified that, "[w]hen the officers pulled up, the Defendant dropped all of the money and tried 'to get back to her car.'" *Id.* He conceded that, during the events, he had in his possession "a small amount of marijuana." *Id.* On both direct and cross-examination, Williams confirmed that he had a criminal record. *Id.* "Williams also admitted on cross-examination that Officer Waller had told him that day that he could have been charged with simple possession and that the truck he was driving could have been seized." *Id.* He stated "that he 'was truthful with' Officer Waller because he did not want to be charged with simple possession." *Id.*

2

The jury found Crews guilty on the sole count of the indictment. *Id.* She was sentenced "as a career offender to twelve years' incarceration to be served at sixty percent." *Id.* On appeal, she maintained that the evidence was insufficient to support the conviction. *Id.* The Tennessee Court of Criminal Appeals (the "TCCA") rejected the argument and affirmed the judgment of conviction. *Id.* at *3.

In August 2016, Petitioner filed a petition for state post-conviction relief (D.E. 10-11 at PageID 394), which was amended by appointed counsel (*id.* at PageID 412). After an evidentiary hearing, the post-conviction trial court denied relief in a written order. (*Id.* at PageID 419.) The TCCA affirmed. *Crews v. State*, No. W2017-00578-CCA-R3-PC, 2017 WL 4640486, at *1 (Tenn. Crim. App. Oct. 16, 2017).

DISCUSSION

Crews filed the Petition on February 9, 2018. She asserts that counsel provided ineffective assistance by failing to call certain "witnesses on [her] behalf" (Claim 1), introduce the video recording of the investigatory stop (Claim 2), and challenge the grounds for the stop (Claim 3). (D.E. 1 at PageID 4-5.) She also claims that the stop violated her Fourth Amendments right to be free from unreasonable search and seizure (Claim 4).[1] (*Id.* at PageID 6.)

On May 25, 2018, Respondent, Stanley Dickerson,[2] filed the state-court record (D.E. 10) and a response (the "Response") to the Petition (D.E. 11). He argues that the exhausted claims are without merit and the remaining claims are procedurally defaulted or non-cognizable in federal

---

[1] For ease of discussion, the Court has renumbered the claims.

[2] The Clerk is DIRECTED to modify the docket to reflect Stanley Dickerson as Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); Fed. R. Civ. P. 25(d).

3

habeas. The inmate submitted a reply (the "Reply"), insisting that she is entitled to relief and requesting that a copy of the police video be included in the state-court record. (D.E. 12.)

I.     Legal Standards.

   A. Federal Habeas Review.

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254. Under the statute, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir.) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (some internal quotation marks omitted), *cert. denied*, 138 S. Ct. 518 (2017).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults her claim where she fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and she can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs where the state court

5

"actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

A petitioner will be entitled to federal court review of the merits of a claim that was procedurally defaulted if she demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Id.* at 750. The ineffectiveness of post-conviction trial counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)).

A petitioner may also overcome her procedural defaults by establishing a "gateway" claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). To open the gateway, a prisoner must "support h[er] allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. She must also show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted h[er]." *Id.* at 327.

    B.  Ineffective Assistance of Counsel.

A claim that an attorney's ineffective assistance has deprived a criminal defendant of her Sixth Amendment right to counsel is controlled by the standards articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient" and (2) "that the deficient performance

6

prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Id.* at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 693). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under § 2254(d) is magnified when a federal court reviews an ineffective-assistance claim:

7

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

II.     Claim 1.

Petitioner asserts that trial counsel rendered ineffective assistance by failing to call as witnesses her employers at the time of the offense, Charles and Barbara Upchurch.³ She raised the claim in the post-conviction trial court. (D.E. 10-11 at PageID 412-13.) At the evidentiary hearing, she testified that she told counsel she wanted the Upchurches to testify on her behalf. (D.E. 10-12 at PageID 435.) She stated that they would have testified that she "was never out of their sight very much at [the] time," and that Charles Upchurch would have testified that Petitioner "didn't have no pills on [her] and [she] wasn't selling no pills and [she] wasn't meeting anybody there." (*Id.* at PageID 435-36.) Crews said Charles was with her at her "every meeting" with counsel and attended every court date and the trial itself. (*Id.*)

Trial counsel testified that, "based on [his] conversation with [Mr. Upchurch] it appeared that he . . . was not present" during the offense, although he "may have appeared shortly thereafter."

---

³Petitioner does not specify which witnesses she believes counsel should have called. However, in her post-conviction appeal, she raised the issue as to the Upchurches. (*See* D.E. 10-13 at PageID 502.) The Court therefore liberally construes Claim 1 as asserting counsel's ineffective assistance with regard to those individuals.

If Petitioner meant to identify other witnesses that she believes her attorney should have called, such a claim would be subject to dismissal for two reasons. First, the Petition's failure to specify other individuals constitutes a pleading deficiency. *See* Habeas Rule 2(c) ("The petition must . . . state the facts supporting each ground"). Second, as Respondent correctly points out, any such claim would be procedurally defaulted and Petitioner has not argued cause and prejudice to excuse the default or actual innocence to overcome it.

(*Id.* at PageID 464.)   Counsel further stated that "Mr. Upchurch would basically insist [that counsel] needed to bribe certain individuals within the judicial system to make the[] charges go away." (*Id.*) "As for Ms. Upchurch," the attorney explained that it was "kind of the same thing," as she "was not there when [the offense] occurred." (*Id.* at PageID 465.)

In denying the claim, the post-conviction trial judge credited counsel's testimony that "there was not anything that [the Upchurches] could [have] add[ed] to the defense." (*Id.* at PageID 486.) He determined, therefore, that counsel did not perform deficiently by deciding not to call these individuals to testify at trial and that Petitioner was not prejudiced by counsel's conduct. (*Id.* at PageID 489; D.E. 10-11 at PageID 419.)

Crews raised the issue on appeal. (D.E. 10-13 at PageID 502.) In reviewing the claim, the TCCA first identified the governing legal standards as those announced in *Strickland*. *Crews*, 2017 WL 4640486, at *3. Applying those standards to the facts adduced at trial and in the court below, the appellate court concluded that Petitioner had not shown that counsel rendered ineffective assistance. *Id.* at *4. The court noted that "[t]he Upchurches were not presented as witnesses at the post-conviction hearing." *Id.* It also found that "even if they had been, trial counsel testified that their testimony would not have been relevant." *Id.*

As indicated above, the TCCA identified *Strickland*'s standards and applied them to the facts of Petitioner's case. The court's decision is therefore not contrary to clearly established Supreme Court law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

In addition, Petitioner has not shown that the decision was based on an unreasonable determination of the facts. She does not, for instance, identify any clear and convincing evidence to undermine counsel's credited testimony that the Upchurches had nothing useful to contribute to the defense and that Charles Upchurch suggested that counsel bribe judicial officials. Finally, Crews does not dispute the TCCA's finding that she did not call Mr. and Mrs. Upchurch as witnesses at the post-conviction hearing.

On this record, the TCCA's determination that counsel did not render ineffective assistance is not an unreasonable application of *Strickland*'s standards. The absence of the putative witnesses' testimonies in the post-conviction record, together with counsel's credited testimony as to why he did not call them, fully support the TCCA's conclusion that counsel's decision was not deficient performance and did not prejudice Petitioner. *See, e.g.*, *Moreland v. Bradshaw*, 635 F. Supp. 2d 680, 712 (S.D. Ohio 2009) (petitioner's failure to present evidence that a witness's "testimony would have benefitted" him was "fatal to any attempt to establish that 'but for counsel's alleged deficiencies,' the results of the proceedings would have been different"), *aff'd*, 699 F.3d 908 (6th Cir. 2012). Claim 1 is therefore DENIED.

III.    Claim 2.

In Claim 2, Crews asserts that her lawyer rendered ineffective assistance by failing to introduce the video taken by the officers at the time of her arrest. In Claim 2A, she argues that "[t]he veracity of the video evidence should have been an issue for the jury to decide." (D.E. 1 at PageID 4.) Liberally construed, the subclaim avers the same ground Petitioner raised to the TCCA on post-conviction appeal, to-wit: counsel was ineffective in failing to introduce the police video because "had the jury heard Officer Waller tell Mr. Williams that he would not charge him with

10

simple possession of marijuana if he testified against" the defendant, Williams' credibility would have been "challenged." (D.E. 10-13 at PageID 503.) Petitioner maintains in Claim 2B that counsel should have introduced the video because "the audio was stopped and started during the officer's questioning of" Williams. (D.E. 1 at PageID 4.) She posits in Claim 2C that counsel was ineffective because the video would have showed the jury that the officer's "sole reason for the stop was because he recognized" her. (*Id.*) In her Reply, Crews requests that the video be included in the state-court record.

Respondent acknowledges that Petitioner exhausted Claim 2A through a full round of available state-court avenues. He argues, however, that the TCCA's rejection of the argument meets AEDPA's standards. He also opposes Petitioner's request that the video be made part of the state-court record. Regarding Claims 2B and 2C, he asserts that Petitioner procedurally defaulted those issues. (*See* D.E. 11 at PageID 549 ("To the extent Petitioner now raises a different basis to support this ground for relief, any such basis is procedurally defaulted.").) Respondent's arguments are well-taken.

    A.  Expansion of the Record.

Petitioner requests that "she be allowed to amend her original petition to include the video/audio footage of the stop." (D.E. 12 at PageID 553.) The Court liberally construes the request as an argument that the record should be expanded. Respondent opposes expanding the record. He acknowledges that "a copy of the video was introduced as an exhibit" at the "post-conviction evidentiary hearing" but, "for whatever reason, that exhibit was not included in the record on appeal." (D.E. 14 at PageID 560.) He argues that Supreme Court precedent therefore forbids this Court to consider it.

As a general matter, a district court has discretion to expand the record in a § 2254 proceeding. *See* Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), Rule 7. However, where a claim was "adjudicated on the merits" in the state court, the federal habeas court's review of that decision "is limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

Claim 2A was adjudicated by the TCCA on the merits. *See Crews*, 2017 WL 4640486, at *4. Under *Pinholster*, this Court must therefore decide if the TCCA's decision meets AEDPA standards based only on the record that was before the appellate court. Because the police video was not included in the appellate record, this Court may not consider it. Expansion of the record to include the video would therefore be futile. The request is DENIED.[4]

B. Claim 2A.

As indicated above, Petitioner submits that counsel should have introduced the police video because it would have undermined Williams' credibility by showing that he received leniency

---

[4]The Court is able to conduct a meaningful review of the TCCA's decision without the video. As discussed above, the factual basis of Petitioner's claim before the TCCA was that the tape shows Williams cooperating with the officers in exchange for the officers not charging him with possession of marijuana. The video was played in open court at the post-conviction hearing. Both Petitioner and counsel acknowledged during their testimonies that the video showed the officers stating that they could have charged Williams with a drug crime. Counsel also affirmed that the tape revealed Williams "ask[ing] the officer, 'Do you want me to say anything else?'" and Investigator Waller telling Williams' mother "'We're not going to charge him today as long as he cooperates with us.'" (D.E. 10-12 at PageID 469-70.) Therefore, there is no factual dispute that the video shows Williams cooperating with the officers in exchange for them declining to arrest him for possession of marijuana. In addition, Petitioner does not dispute counsel's testimony that Williams' description at trial of Crews' criminal conduct was "consistent with [Williams'] statement on the video[.]" (*Id.* at PageID 473-74.)

12

from the officers in exchange for his cooperation.  At the post-conviction hearing, Crews testified that counsel should have introduced the video '[b]ecause it show[ed] . . . that there[] [was] no money exchanged," that she "was nowhere around when they done th[e] video," and that "[t]he video cuts off four different times." (D.E. 10-12 at PageID 451.)  She also confirmed that it "was important" for the jury to hear "the officers [saying] that they could have charged Mr. Williams, but they chose not to[.]"  (*Id.* at PageID 452.)

Trial counsel testified that his "strategy at trial was . . . to paint [the events] as a drug deal between Brandon Williams and Kenneth Connell," and to convince the jury that "when the police got involved, they just pointed the finger at Carroll because she was the closest person." (*Id.* at PageID 468-69.)  He stated that he therefore "had to impeach [Williams'] testimony." (*Id.* at PageID 469.)  Regarding his decision not to introduce the video, counsel explained his thought process thusly:  Williams "essentially testified at trial to what that tape showed, and I feel like, you know, with juries, consistent statements make someone more credible.  And I didn't want the jury to essentially hear his same testimony twice.  So I asked for it not to be played on that ground." (*Id.*)  Counsel further stated that he "cross-examined Mr. Williams about" his cooperation with the officers in exchange for them foregoing a charge of possession of marijuana.  (*Id.* at PageID 470.)  He also testified that he pressed that point during his closing argument.  (*Id.*)

The post-conviction trial judge, who viewed the video, found that the tape showed Williams "set[ting] out very clearly" in his interview with Investigator Waller "that he bought hydrocodone from . . . Ms. Crews." (*Id.* at PageID 487.)  The court credited counsel's testimony that he "did develop a trial strategy" and found that counsel "did all that he could do under the

13

circumstances to properly defend" his client.  (*Id.* at PageID 489.)  The court therefore held that counsel had not rendered ineffective assistance in deciding not to introduce the police video.  (*Id.*)

Petitioner appealed.  Reviewing the evidence adduced in the court below, the TCCA found that, although "Petitioner wanted [the video] admitted at trial," counsel "did not admit it as part of his trial strategy."  *Crews*, 2017 WL 4640486, at *2.  The court determined that counsel's strategy was "reasonably based" and refused to "second-guess" it.  *Id.* at *4.  The TCCA therefore held that "the Petitioner . . . failed to establish deficient performance or prejudice arising therefrom" and denied the claim.  *Id.*

Crews has not demonstrated that the TCCA's decision fails to meet AEDPA's deferential standards.  First, she cannot show that the decision is contrary to clearly established Supreme Court law because the appellate court identified and applied *Strickland*'s standards.  *See Williams*, 529 U.S. at 406.

Second, she has not argued that the decision was based on an unreasonable determination of the facts.  She has not, for instance, identified any clear and convincing evidence to undermine the post-conviction court's implicit determination that counsel's testimony was credible.  In particular, she has not pointed to clear and convincing evidence that would call into question counsel's description of his trial strategy, his testimony that Williams' statements on the video regarding Crews' conduct were essentially identical to Williams' trial testimony, and his explanation that Williams' motive for cooperating with law enforcement could be brought out on cross-examination.  She also does not dispute what the transcript from the criminal trial clearly shows, to-wit:  that counsel did, in fact, secure Williams' admission during cross-examination that

14

he cooperated with the officers because he did not want to be charged with possession of marijuana and that counsel emphasized Williams' admission during his closing argument.

Finally, Petitioner has not established that the TCCA's rejection of her claim is the result of an unreasonable application of *Strickland*'s standards. Crediting counsel's explanation for why he chose not to introduce the police video, the TCCA refrained from second-guessing counsel's strategy and the actions he chose to take in furtherance of that strategy. The appellate court's approach is consistent with *Strickland*'s precepts. *See Strickland*, 466 U.S. at 690 (an attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options"). The TCCA's determination that counsel did not render ineffective assistance was, therefore, patently reasonable. Claim 2A is DENIED.

C.  Claims 2B and 2C.

As indicated above, Petitioner proffers two additional reasons why she believes counsel was ineffective in failing to introduce the police video. Specifically, she argues that the video would have benefitted the defense because the audio was started and stopped several times, and because it would show that the officers knew her. Petitioner did not present these arguments in her post-conviction appeal and the time for doing so has passed, *see* Tenn. Code Ann. §§ 40-30-102(a), (c). The claims are therefore procedurally defaulted. Petitioner has not asserted cause and prejudice to excuse the defaults or actual innocence to overcome them. Claims 2B and 2C are therefore barred from habeas review and are DISMISSED.

IV.    Claim 3.

Petitioner submits that counsel provided ineffective assistance by "fail[ing] to address whether there was probable cause for the stop." (D.E. 1 at PageID 4.) She raised the claim in her

15

post-conviction petition, as well as her amended petition. Respondent contends that the claim is not properly before the Court because it is procedurally defaulted. The Court agrees.

Crews did not present the issue to the TCCA on post-conviction appeal. *Crews*, 2017 WL 4640486, at *3 n.2. Because the time for raising it in the state courts has passed, *see* Tenn. Code Ann. §§ 40-30-102(a), (c), the claim is procedurally defaulted.

Petitioner insists that the procedural default should be excused because her post-conviction appellate counsel rendered ineffective assistance by "dropping the issue." (D.E. 12 at PageID 554.) As discussed earlier, the Supreme Court in *Martinez* held that post-conviction counsel's ineffective assistance in failing to raise a substantial claim of trial-counsel-ineffective-assistance may be cause to excuse a procedural default. *Martinez*, 566 U.S. at 14. However, the rule in *Martinez* does not apply to excuse a procedural default that occurs on post-conviction appeal. *Young v. Westbrooks*, 702 F. App'x 255, 267 (6th Cir. 2017) (citing *Coleman*, 501 U.S. at 754), *cert. denied*, 138 S. Ct. 749 (2018).

The procedural default is therefore unexcused. Claim 3 is DISMISSED.

V.     Claim 4.

Crews avers that her Fourth Amendment right to be free from unreasonable seizures was violated when the officers conducted the investigatory stop. Respondent maintains that the claim is not cognizable in federal habeas.

A Fourth Amendment claim is not cognizable on collateral review as long as the defendant had a "full and fair" opportunity to litigate the claim in the first instance. *Stone v. Powell*, 428 U.S. 465, 494 (1976). "The Sixth Circuit Court of Appeals utilizes a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in

16

state court[.]" *Reynolds v. White*, No. 02-71201, 2003 WL 22387586, at *11-12 (E.D. Mich. Sept. 23, 2003) (citing *Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000)). "First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a [F]ourth [A]mendment claim.  Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek,* 213 F.3d at 952 (internal quotation marks omitted).

Crews has not asserted that Tennessee does not have a mechanism by which she could have raised a Fourth Amendment challenge.  But even if she had, such an argument would be without merit.  *See Gray v. Rose*, 627 F. Supp. 7, 12 (M.D. Tenn.), *aff'd sub nom. Gray v. Attorney Gen. for State of Tenn.*, 779 F.2d 50 (6th Cir. 1985) (discussing numerous procedural mechanisms under Tennessee law for raising a Fourth Amendment issue).  She also does not maintain that the state's mechanism failed and therefore frustrated her efforts to raise the issue.  Claim 4 is thus non-cognizable and is DISMISSED.

For all of these reasons, the Petition is DENIED.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that, if the district court certifies that an appeal would not be taken in good faith, the prisoner must file her motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore DENIED.[5]

IT IS SO ORDERED this 17th day of February 2021.

                                                                             s/ J. DANIEL BREEN
                                                                             UNITED STATES DISTRICT JUDGE

---

[5] If Petitioner files a notice of appeal, she must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.